IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| KEANYANDAARWA S. SCOTT, #Y58557, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) )   Case No. 25-cv-00609-JPG |
| WEXFORD HEALTH SERVICES, INC., DR. VICKY BECKER, and NURSING STAFF (NURSE S), | ) ) ) ) ) |
| Defendants. | ) |

**MEMORANDUM & ORDER**

**GILBERT, District Judge:**

Plaintiff Keanyandaarwa Scott, an inmate in the custody of the Illinois Department of Corrections (IDOC) who is currently incarcerated at Robinson Correctional Center (Robinson), brings this action pursuant to 42 U.S.C. § 1983. In the Complaint, Plaintiff claims that he was denied adequate medical care for a skin infection at Robinson and suffered permanent injuries as a result. (Doc. 1, pp. 1-131). He seeks monetary and injunctive relief.[1] *Id*. at 13.

The Complaint is subject to review under 28 U.S.C. § 1915A, which requires screening and dismissal of any portion that is legally frivolous or malicious, fails to state a claim for relief, or requests money damages from an immune defendant. 28 U.S.C. § 1915A(a)-(b). At this juncture, the factual allegations are liberally construed. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

---

[1] Plaintiff specifically seeks "ongoing medical treatment" to address his "concerns of not being able to have children or a family" after his release in 2027-28. He does not seek a temporary restraining order or preliminary injunction or refer to Rule 65 of the Federal Rules of Civil Procedure. This request is construed as one for permanent injunctive relief *at the close of the case*. If he requires interim relief, Plaintiff may file a motion for temporary restraining order and/or preliminary injunction under Rule 65.

1

## **Complaint**

Plaintiff makes the following allegations in the Complaint (Doc. 1, pp. 9-11): Plaintiff developed a painful boil on his skin while he was housed at Stateville Northern Reception and Classification Center (Stateville NRC). *Id*. at 9. He was given a 50-day course of doxycycline, but he noticed no improvement while taking the antibiotics from June 27, 2023 to August 16, 2023. Meanwhile, a separate infection formed on his ear. *Id*.

After transferring to Robinson, Plaintiff complained to Officer Smith about the "constant pain" caused by his skin infection. *Id*. He submitted a medical request form for treatment of the boil on August 16, 2023, but he was not seen in the health care unit (HCU) until August 23, 2023. "Wexford" prescribed Bactrim (500 mg) twice daily for five days. Plaintiff immediately noticed problems with the medicine. He developed rashes, blisters (0.5 to 2 inches), and swelling in his genital area and legs. The condition was ultimately diagnosed as medically induced Stevens-Johnson Syndrome.[2] *Id*.

On August 23, 2023, Plaintiff met with Dr. Becker's nurse (Nurse S) to discuss his reaction to Bactrim. During the appointment, Nurse S expressed her strong, hateful opinion of Black males with his physical stature. Then, she claimed that he was "too dark" to see anything. *Id*. Nurse S refused to examine Plaintiff, even after an officer urged her to do so. Had she examined him, Nurse S would have observed blisters. Instead, Nurse S instructed Plaintiff to keep taking the medication. *Id*.

On August 24, 2023, Plaintiff complained of increasing blistering and pain to an officer. He requested permission to go to the HCU, where he described his symptoms and asked whether

---

[2] Stevens-Johnson Syndrome is a rare, serious disorder of the skin and mucous membranes that begins with flu-like symptoms and progresses to skin rashes and blistering that causes the top layer of skin to die and shed. It presents a medical emergency that typically requires hospitalization and treatment of pain and wound care. *See* https://www.mayoclinic.org/diseases-conditions/stevens-johnson-syndrome (site last visited July 10, 2025).

he was having an allergic reaction to the Bactrim. Medical staff "did not care" and simply told him to keep taking Bactrim. *Id*.

On August 25, 2023, Plaintiff woke up in extreme pain with dark spots covering his body, and he "urinated blood." *Id*. at 10. When he showed his mother the blisters on his legs and ankles during her visit that day, she contacted Constituent Services to request medical care on his behalf. Plaintiff separately requested treatment in Wexford's Health Care Unit. In the HCU, Plaintiff asked Dr. Becker's nurse (Nurse S) to examine the growing number of blisters (0.5" to 2") and complained of the most pain in his genital area. The boil had grown into a "massive, infected sore." *Id*. Even so, Nurse S refused to examine Plaintiff. Officer Smith finally took Plaintiff seriously when he revealed that he was an honorably discharged veteran, trained security officer, and certified EMT. Nurse S then gave him a single dose of Benadryl (50 mg), but instructed him to keep taking Bactrim (500 mg). *Id*.

On August 26, 2023, Plaintiff's pain was intolerable. His genital area was peeling, and the blisters had spread all over his body. His lungs were hurting, and he could barely breathe. Plaintiff begged for treatment. Although the officers tried to help him, the medical staff said he was "faking it" and ignored him. *Id*.

On August 27, 2023, Dr. Becker examined him for the first time. The doctor suspected a sexually transmitted disease, even after Plaintiff reported no sexual activity since June 2023. Dr. Becker sent him for testing at Crawford Hospital the same day. Plaintiff asked the doctor to contact the Veterans Administration to request his medical records, but she ignored him. *Id*.

By August 28, 2023, Plaintiff could no longer function. He was handcuffed, shackled, and suffering from severe pain, burning blisters, and difficulty breathing. He could not offer hospital staff any information and asked them to review his medical records instead; they ignored him. No

one requested his VA medical records.  The STD tests came back negative, and the ER doctor was unable to diagnose his condition.  He was transferred to Carle Hospital.  *Id*.

From August 29, 2023 through September 1, 2023, Plaintiff remained hospitalized at Carle Hospital, where he was diagnosed with medically induced Stevens-Johnson Syndrome and chronic blood toxicity.  *Id*. at 11.  His entire body was photographed, and he was moved into the burn unit and isolated for treatment of internal and external burns caused by the condition.  He was discharged with specific instructions for placement in isolation or a burn unit and prescribed medication for his open wounds on September 2, 2023.  *Id*.

During his initial recovery back in Robinson's HCU, Plaintiff had to sleep sitting up in puss and blood secretions.  He was required to wear cotton underwear that stuck to his blisters and caused more bleeding, secretion, and scab removal.  He was constantly exposed to flies and other inmates.  However, he was unable to care for his wounds.  He could barely get up and retrieve gauze and solution for his burns.  Even after he was discharged from Robinson's HCU on September 27, 2023, Plaintiff's boil and burn scars continued to bleed for eight months.  Nurse S no longer works at Robinson, although Dr. Becker is still employed there.  *Id*.

Plaintiff now suffers from scarring and discoloration of his genital region, and he fears being unable to conceive children.  He has been denied access to the photographs taken at the hospital, and his grievances about the incident have all denied.  *Id*.

**Preliminary Dismissals**

Plaintiff mentions certain individuals in the statement of his claim but does not identify them as defendants, including Officer Smith, officers, medical staff, nursing staff, and nurses.  The Court will not treat non-parties or nebulous groups as defendants.  All claims against them are dismissed without prejudice.  FED. R. CIV. P. 10(a) (complaint "must name all the parties").

**Discussion**

Based on the allegations summarized above, the Court finds it convenient to designate the following claims in the *pro se* Complaint:

> **Count 1:** Eighth Amendment claim against Defendants for exhibiting deliberate indifference to Plaintiff's skin infection at Robinson by prescribing Bactrim and then ignoring symptoms of his serious allergic reaction to the medicine beginning August 23, 2023.
>
> **Count 2:** Fourteenth Amendment equal protection claim against Nurse S for refusing to examine or treat Plaintiff at Robinson beginning August 23, 2023 because of his race.
>
> **Count 3:** Illinois medical negligence claim against Defendants for prescribing Bactrim for Plaintiff's skin infection at Robinson and then ignoring symptoms of his serious allergic reaction to the medicine beginning August 23, 2023.

**Any claim that is mentioned in the Complaint but not addressed herein is considered dismissed without prejudice as inadequately pled under *Twombly*.**[3]

**Count 1**

An Eighth Amendment claim arises against a prison official when he or she responds with deliberate indifference to an objectively serious medical condition of an inmate. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). The decision to ignore a medical condition that is obviously in need of treatment supports a claim of deliberate indifference. *Dixon v. County of Cook*, 819 F.3d 343, 350 (7th Cir. 2016). A decision to delay necessary treatment can also amount to deliberate indifference, depending on the seriousness of the medical condition, the ease of providing treatment, and the pain resulting from the delay. *Smith v. Knox Cnty. Jail*, 666 F.3d 1037, 1040 (7th Cir. 2012) ("Even a few days' delay in addressing severely painful but readily treatable condition suffices to state a claim of deliberate indifference").

---

[3] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face").

The allegations support a deliberate indifference claim against Nurse S, who repeatedly refused to examine Plaintiff for complaints of blistering, burning, and pain associated with his skin infection and his use of Bactrim. The nurse's refusal to examine the plaintiff caused unnecessary and prolonged pain, treatment delays, and permanent injuries. Count 1 shall receive further review against Nurse S.

The allegations articulate no claim against Dr. Becker. The doctor is described as Nurse S's supervisor. However, this supervisory role, alone, does not give rise to a claim against the doctor. Section 1983 "does not establish a system of vicarious liability." *Burks v. Raemisch*, 555 F.3d 592, 593-94 (7th Cir. 2009). In the § 1983 context, liability hinges on personal involvement in a constitutional deprivation. According to the allegations, the doctor played no role in any delay or denial of medical care. Dr. Becker allegedly met with Plaintiff about his adverse reaction to Bactrim on August 27, 2023. Although the doctor could not identify the cause of his symptoms, Dr. Becker sent Plaintiff to an outside hospital for proper diagnosis and treatment the same day. Plaintiff describes no conduct by this defendant that caused unnecessary or prolonged pain or exacerbated Plaintiff's injuries. Count 1 shall be dismissed without prejudice against Dr. Becker.

In order to maintain an Eighth Amendment claim against a private corporation such as Wexford, a plaintiff must establish that a policy, custom, or practice attributable to the corporation actually caused a violation of the plaintiff's constitutional rights. *Shields v. Illinois Dept. of Corr.*, 746 F.3d 782, 786 (7th Cir. 2014) (citing *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658 (1978)). Plaintiff identifies no policy, custom, or practice attributable to the private corporation that resulted in the denial of medical care to Plaintiff, so Count 1 shall be dismissed without prejudice against Wexford.

**Count 2**

A prima facie case of discrimination under the equal protection clause requires a plaintiff to demonstrate that he is a member of a protected class, that he is otherwise similarly situated to members of the unprotected class, and that he was treated differently from members of the unprotected class. *Brown v. Budz*, 398 F.3d 904, 916 (7th Cir. 2005) (citing *McNabola v. Chicago Transit Auth.*, 10 F.3d 501 (7th Cir. 1993); *McMillian v. Svetanoff*, 878 F.2d 186, 189 (7th Cir. 1989)). Plaintiff alleges that he is a member of a protected class based on his race and that Nurse S refused to examine or treat his skin condition because of his race. Count 2 shall receive further review against this defendant. The allegations implicate no other defendants in this misconduct.

**Count 3**

Plaintiff also brings a claim of medical negligence against the defendants under Illinois state law. In a case containing federal and state law claims, a district court may exercise supplemental jurisdiction over state law claims that "are so related to [the federal law claims] that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Plaintiff's allegations of negligence derive from the same facts as his federal constitutional claim, so this Court will exercise supplemental jurisdiction over the claim.

In order to bring a negligence claim under Illinois law, a plaintiff must allege facts suggesting that the defendant owed him a duty of care, breached the duty, and that the breach was the proximate cause of the plaintiff's injury. *Thompson v. Gordon*, 948 N.E.2d 39, 45 (Ill. 2011) (citing *Iseberg v. Gross*, 879 N.E.2d 278 (2007)). The allegations support a negligence claim against Nurse S, who was repeatedly asked to examine and treat Plaintiff's skin infection and reaction to the Bactrim and refused to do so, resulting in permanent injuries. The allegations against Dr. Becker and Wexford are undeveloped and fall short of describing negligence on their

part. Therefore, Count 3 shall proceed against Nurse S only, and this claim shall be dismissed without prejudice against the other defendants.

With regard to Nurse S, the Court notes that Plaintiff has not provided the affidavit or medical report required under Illinois state law, *i.e.*, 735 ILCS § 5/2-622. If he intends to pursue this claim, Plaintiff must file an affidavit stating that "there is a reasonable and meritorious cause" for litigation of the medical malpractice claim, along with a physician's report in support of the affidavit. *See Young v. United States*, 942 F.3d 349 (7th Cir. 2019). His failure to do so is not dispositive of his claim at this early stage. *Id*. However, Plaintiff must comply with the requirements set forth in 735 ILCS § 5/2-622 before summary judgment on the merits. For now, Count 3 shall proceed against Nurse S.

## Identification of Unknown Defendant

Plaintiff shall be allowed to proceed with Counts 1, 2, and 3 against Defendant "Nurse S." However, this defendant must be identified with particularity before service of the Complaint can be made on her. Here, the plaintiff will have the opportunity to engage in limited discovery to ascertain the identity of this defendant. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 832 (7th Cir. 2009). The Current Warden of Robinson Correctional Center will be added as a defendant, in his or her official capacity only, and shall be responsible for responding to discovery aimed at identifying these unknown defendants. Once the name of Nurse S is discovered, Plaintiff shall file a motion to substitute the newly identified defendant in place of the generic designation in the case caption and throughout the Complaint.

## Disposition

**IT IS ORDERED** that the Complaint (Doc. 1) survives screening. **COUNTS 1, 2,** and **3** are subject to further review against Defendant **NURSE S**, once this defendant is identified by first and last name in a Motion to Substitute Defendant. In addition, Plaintiff must comply with

735 ILCS § 5/2-622 in order to proceed with Count 3 against Nurse S, according to the instructions and deadlines for doing so in the Scheduling Order to be entered herein. The **CURRENT WARDEN OF ROBINSON CORRECTIONAL CENTER** is **ADDED** as a defendant, in an official capacity only, to help identify Nurse S and to implement any injunctive relief ordered in this case.

**COUNTS 1, 2,** and **3** are **DISMISSED** without prejudice for failure to state a claim against **ALL OTHER DEFENDANTS**.

**The Clerk of Court is DIRECTED to ADD the Current Warden of Robinson Correctional Cener; TERMINATE Wexford Health Services, Inc., Dr. Vicky Becker, and Nursing Staff as parties in CM/ECF; and ENTER the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.**

With regard to **COUNTS 1, 2,** and **3**, the Clerk of Court shall prepare for Defendant **CURRENT WARDEN OF ROBINSON CORRECTIONAL CENTER** (official capacity only) and **NURSE S** (once identified): (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint (Doc. 1), and this Memorandum and Order to Defendant's place of employment as identified by Plaintiff. If Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on Defendant, and the Court will require Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If Defendant can no longer be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with Defendant's current work address, or, if not known, Defendant's last-

known address.  This information shall be used only for sending the forms as directed above or for formally effecting service.  Any documentation of the address shall be retained only by the Clerk.  Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendant is **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).  **Pursuant to Administrative Order No. 244, Defendant should only respond to the issues stated in this Merits Review Order.  The Current Warden of Robinson Correctional Center need not answer the Complaint and should only appear in this matter.**

**IT IS ORDERED** that if judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, even though his application to proceed *in forma pauperis* was granted.  *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that he is under a continuing obligation to inform the Clerk of Court and each opposing party of any address changes; the Court will not independently investigate his whereabouts.  This shall be done in writing and not later than **14 days** after a transfer or other change in address occurs.  Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution.  FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: 7/14/2025**

> s/J. Phil Gilbert
> **J. PHIL GILBERT**
> **United States District Judge**

## **Notice**

The Court will take the necessary steps to notify the appropriate defendant of your lawsuit and serve him/her with a copy of your complaint.  After service has been achieved, the defendant will enter his/her appearance and file an Answer to your complaint.  It will likely take at least 60 days from the date of this Order to receive the Answer, but it is entirely possible that it will take 90 days or more.  When the defendant has filed answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures.  Plaintiff is advised to wait until counsel has appeared for the defendant before filing any motions, in order to give the defendant notice and an opportunity to respond to those motions.  Motions filed before defendant's counsel has filed an appearance will generally be denied as premature.  The plaintiff need not submit any evidence to the court at this time, unless otherwise directed by the Court.